**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 13 CR 951 |
| v. | Judge Robert M. Dow, Jr. |
| LAURANCE H. FREED, | |
| Defendant. | |

**DEFENDANT'S THIRD MOTION FOR COMPASSIONATE RELEASE**

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the 2018 First Step Act, Defendant Laurance H. Freed moves for an order granting him compassionate release from the terms of his home confinement and imposing probation for the balance of his 36-month prison sentence.

1. Defendant is serving a 36-month term of imprisonment for his conviction for bank fraud, mail fraud, and making false statements to a financial institution. He is to be released from custody on April 14, 2021.

2. As this Court is aware from Defendant's prior motions for compassionate release, his wife has Stage 4 breast cancer for which she receives continuing medical treatments, and he and his wife have a seven-year old daughter.

3. In December 2019, this Court held that compassionate release under the First Step Act was unavailable to Defendant because his wife was still capable of caring for their daughter most of the time with help from family members or paid sitters. [388]. That ruling preceded the COVID-19 outbreak in the United States.

4. At the time, Defendant was serving his sentence at FPC Duluth. On May 13, 2020, the Federal Bureau of Prisons (BOP) transferred Defendant to home confinement with his family in Chicago. The reason was the BOP's recognition that older inmates—like Defendant, who is in his late 50s—have a higher risk of infection from COVID-19. On March 26, 2020, Attorney General Barr published a memorandum to Michael Carbajal, Director of the BOP, encouraging his use of home confinement for at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than BOP facilities. Defendant's transfer to home confinement was consistent with that authorization. Among other things, the BOP considered Defendant's exemplary conduct during his incarceration. It also considered his overall PATTERN risk score of -12, which is in the minimum risk category. Defendant is financially independent. His crimes were non-violent. He is not likely to recidivate and his commitment to charitable work was evident long before his conviction.

5. Defendant's wife, with her cancer and ongoing treatments, is highly susceptible to infection. According to the Center for Disease Control, people who are immunocompromised, like those undergoing cancer treatment, are at high-risk for severe illness from COVID-19. *Https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html* (last visited June 18, 2020).

6. Under the limitations of his home confinement, Defendant may only leave his apartment restrictively for basic needs and appointments. While the Case Manager has been helpful in a slight broadening of the parameters, the rigidity of the system does not allow Defendant to be a caregiver for his wife or a parent for his daughter on a practical level, requiring reliance on sitters and caregivers.

7. It is not possible to know whether the sitters or other helpers are asymptomatic coronavirus carriers. According to Dr. Anthony Fauci, head of the U.S. National Institute for Allergy and Infectious Diseases, current evidence suggests that anywhere from 25 to 45 percent of people infected with coronavirus will never show symptoms, and "we know from epidemiological studies they can transmit to someone who is uninfected even when they're without symptoms." *Https://www.usnews.com/news/health-news/articles/2020-06-12/most-asymptomatic-coronavirus-cases-stay-that-way-cruise-ship-data-shows* (last visited June 18, 2020).

8. Defendant asks this Court to convert the balance of his home confinement to probation. Under the First Step Act, this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

9. In the six months that have passed since this Court denied Defendant's second motion for compassionate release, COVID-19 has become a pandemic. Chicago is a hotbed for the deadly and highly contagious virus, the carriers of which infect others without knowing they are infected themselves. Defendant reasonably fears that the consistent use of sitters and other helpers may result in his wife's exposure to COVID-19. That is an extraordinary and compelling reason to grant relief.

10. Furthermore, Section 3553(a) sentencing factors support Defendant's request for compassionate release. The goals of penal sanctions are "retribution, deterrence, incapacitation,

and rehabilitation." *Graham v. Fla.*, 560 U.S. 48, 71 (2010). The applicable Section 3553(a) factors here are: (1) "the nature of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense"; (3) the need to "afford adequate deterrence to criminal conduct"; and (4) the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

11. This Court determined that a 36-month sentence would fulfill the goals of penal sanctions. But the same sentencing goals can be achieved through an order granting "probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A)(i).

12. At sentencing, this Court found that Defendant was unlikely to recidivate, his charitable activities and good deeds were "a big, broad, positive side to this ledger" [295 at 6-7], and he fully paid his restitution and fine obligations even before being incarcerated. [304 at 1; 232]. He had no criminal record before his conviction in this case. His prosecution and conviction were highly publicized in the media. He is not a danger to the public.

13. Defendant's conviction is a deterrent to anyone contemplating a criminal act. He has lost his livelihood and his reputation. He cannot apply for work or do business or borrow money or apply for insurance without disclosing his conviction. He may be unable to vote if he moves to another state. His conviction is in the public record.

14. Probation would allow Defendant to be a proper caregiver in assisting his wife in all her medical and daily needs, as well as being able to personally care for their daughter outside their home and protect their household from exposure to COVID-19, without reducing the Court's 36-month sentence.

WHEREFORE, Defendant respectfully requests the entry of an order of compassionate release converting the balance of his 36-month sentence from home confinement to probation.

Dated: June 26, 2020                                LAURANCE H. FREED,

                                                                                                    By: /s/ *Steven P. Blonder*
                                                                                                         One of His Attorneys

Steven P. Blonder (ARDC #6215773)
Jonathan L. Loew (ARDC #6184157)
Daniel A. Hantman (ARDC #6312997)
Much Shelist, P.C.
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606
(312) 521-2000

**CERTIFICATE OF SERVICE**

I, Steven P. Blonder, an attorney, certify that on June 26, 2020, I electronically filed an unredacted copy of Defendant's Third Motion for Compassionate Release with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

/s/ *Steven P. Blonder*